# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Brian Gorsline, Dawn Gorsline, Paul Batkowski and Michele Batkowski | : <br> : <br> : <br> : |
| v. | : No. 1735 C.D. 2014 <br> : Argued: June 15, 2015 |
| Board of Supervisors of Fairfield Township | : <br> : <br> : |
| v. | : <br> : |
| Inflection Energy, LLC and Donald Shaheen and Eleanor Shaheen, his wife, <br> Appellants | : <br> : <br> : <br> : |

BEFORE:   HONORABLE MARY HANNAH LEAVITT, Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE ANNE E. COVEY, Judge

OPINION
BY JUDGE LEAVITT                                    FILED: September 14, 2015

Inflection Energy, LLC and Donald and Eleanor Shaheen appeal an order of the Court of Common Pleas of Lycoming County (trial court) that denied Inflection's application to construct and operate a natural gas well on land it has leased from the Shaheens.[1]  In so doing, the trial court set aside the order of the Board of Supervisors of Fairfield Township granting a conditional use permit for the well.  We reverse the trial court.

---

[1] The Marcellus Shale Coalition has filed an *amicus curiae* brief on behalf of Inflection, one of its members.

## Background

Inflection proposes to locate a natural gas well on land in Fairfield Township's Residential Agriculture (RA) District. The Township has three zoning districts: the RA District, the General Commercial District and the Industrial District. Most of the land in the Township has been assigned to the RA District. Because the Fairfield Township Zoning Ordinance (October 16, 2007), *as amended* (Zoning Ordinance), does not specifically authorize natural gas wells, Inflection applied for a conditional use permit under the "savings clause," which authorizes the Board of Supervisors to grant a conditional use where a proposed use is not specifically authorized anywhere in the Township. In that case, the applicant must show that the proposed use is consistent with the uses that are permitted in the zoning district and with the public health and safety. ZONING ORDINANCE, §12.18.[2] The Township's Board of Supervisors had previously granted conditional use approval for four other natural gas wells in the RA District.

The Board of Supervisors scheduled a public hearing on Inflection's application, which was opposed by Appellees Brian and Dawn Gorsline and Paul and Michele Batkowski and other neighbors (collectively, Neighboring Landowners). They expressed concern that the project would adversely affect their well water, as well as the stream located on the Shaheen property. They were also concerned about truck traffic, noise, light pollution from nighttime operations, the criminal record of employees that Inflection may hire to work at its well and how the well could affect their property values.[3]

---

[2] The text of Section 12.18 of the Zoning Ordinance is set forth *infra. See also* Reproduced Record at 493a (R.R. ___).

[3] The Delaware Riverkeeper Network filed an *amicus curiae* brief in support of Neighboring Landowners.

2

At the first hearing, Thomas M. Erwin,[4] Inflection's senior field operations manager, testified. Erwin, who holds a M.A. in Engineering and has 35 years of experience in the oil and gas industry, was accepted as an expert in the design, permitting, and development of gas wells.

Erwin began by noting that the Shaheen property consists of 59.88 acres, has no buildings and is currently used for farming. The only improvement is the farm access road. Inflection's well pad will measure 300 feet by 350 feet during construction and 150 feet by 150 feet after construction. The natural gas well operation will include a level pad, a well head, a water impoundment for 2,000,000 gallons of water, and sediment and erosion controls. The well pad will be located at the lowest visible point on the property. Erwin explained that Inflection will

> probably drill two wells off the pad initially, and then it depends upon the results. You could drill more wells off of that pad.

Reproduced Record at 15a (R.R. __). The farm access road will be improved to connect the well pad to Quaker State Road and will be constructed to meet applicable safety standards. The remainder of the Shaheen property will continue to be farmed.

During the 90-day construction period, an average of 35 trucks will visit the site per day. Many more will be required when the road is graveled. A total of 120 trucks will enter the property during the drilling phase and 225 during the completion phase. Once each well becomes operational, it is unmanned; one pick-up truck a day will visit the well. Inflection plans to provide water by

---

[4] His name was spelled "Irwin" in the transcript, which was not correct. Inflection Brief at 7.

pipeline, but if that does not work, water will have to be brought in by truck. The amount of water needed depends on the number of "fracs" done. R.R. 46a.

Erwin estimated that the well, which will run for 24 hours a day, would be used for nine months. He acknowledged that Inflection had been at a well site in Eldred, Pennsylvania for over a year and continues to drill on the property.[5]

Erwin testified that there is one home within 1,000 feet of the well pad and a large residential development within 3,000 feet of the well pad. There are more than 125 water wells within a 3,000-foot radius of the proposed well pad; water samples will be taken from these wells before drilling begins. Erwin stated that the well operation would not create noise, nighttime lighting or odors. The drilling phase will produce noise, but it will be abated with bales of hay. Further, Erwin stated that Inflection will work with neighbors should they develop concerns about noise.

Neighboring Landowners questioned Erwin about the potential for contaminating water wells, the noise, the increase in truck traffic and the potential for employees at the well pad posing a risk to the safety of the community. The Board continued the proceeding so that Inflection could provide additional evidence regarding these concerns of Neighboring Landowners.

At the second hearing, Inflection produced its plan for Quaker State Road. It also provided its Master Service Agreement, which requires all employees to pass a criminal background check. Inflection also presented Thomas D. Gillespie, P.G., who is Inflection's director of regulatory and environmental

---

[5] Inflection's erosion and sediment control plan states that Inflection will be drilling and completing numerous wells on a rotating basis and will be in the well drilling and well completion stage at the Shaheen well site for two to three years.

4

affairs and a licensed geologist for over 30 years. He testified in response to the health and safety concerns raised by Neighboring Landowners.

Gillespie testified about the stream and wetlands on the Shaheen property. He explained that Inflection's erosion and sediment control plan for the stream was approved by the Pennsylvania Department of Environmental Protection (DEP). The plan evaluated the entire site for storm water runoff, erosion, and sediment transport. It also accounts for the water to be used at the site for fracking and ensures that there will be no increase in erosion. Gillespie explained that the well pad will not involve that part of the Shaheen property that is a wetland. Further, the approved plan obligates Inflection not to flood the wetland or, alternatively, starve it of water.

Neighboring Landowners questioned Gillespie. He reiterated that the plan was designed to prevent any environmental insults. Nevertheless, in the unlikely event a neighbor's well or land was affected, Inflection would "set it right until you and every regulator involved is satisfied." R.R. 298a. Gillespie explained that a well is drilled close to a mile below the surface, which is far below the water that serves Neighboring Landowners' wells.

Gillespie was asked about the expected truck count per day, as opposed to the aggregate truck count for the project. He responded that in addition to the average of 35 trucks per day during the 90-day construction phase, there would be 150 trucks per day during the drilling phase, which lasts about a week for each well. Thereafter, truck traffic would be minimal.

Neighboring Landowners did not present any evidence in opposition to that presented by Inflection. They did, at the Board's invitation, make statements. One of them, Gorsline, used his statement to provide a report from DEP that listed citations that had been issued to Inflection at other gas drilling operations.

5

**Board of Supervisors' Decision**

The Board of Supervisors found, first, that Inflection's proposed use was neither permitted nor denied anywhere in the Township. It then concluded:

> 3. As Applicant's request is governed by Section 12.18 of the [Zoning] Ordinance, the [Board] must follow the procedure set forth in Section 14.2 of the [Zoning] Ordinance and consider the factors set forth in Section 12.1 of the [Zoning] Ordinance.

Board Decision, Conclusion of Law No. 3. The Board focused its 23-page decision to the question of whether Inflection satisfied the standards for a conditional use under Section 14.2.5 of the Zoning Ordinance.[6] In general, Section 14.2.5 requires the conditional use not to: adversely affect the neighborhood; create an undue nuisance or serious hazard; adversely impact the area economically; or create excessive noise, glare or odor. Further, the conditional use must satisfy standards for traffic, parking, and waste disposal. The Board concluded that Inflection met its burden on each of these factors.

---

[6] Section 14.2.5 states, in relevant part, as follows:

> The Supervisors shall, in making decisions on each application for a Conditional Use, consider the following general criteria, in addition to the special criteria established elsewhere in this Ordinance.
>
> 14.2.5.1 the purpose .. and compatibility of the requested conditional use…;
>
> 14.2.5.2 whether the specific site is an appropriate location for the use…;
>
> 14.2.5.3 whether the use developed will adversely affect the neighborhood;
>
> 14.2.5.4 whether the use will create undue nuisance or serious hazard…;
>
> 14.2.5.5 whether [the use will be properly operated];
>
> 14.2.5.6 the economic, noise, glare, or odor effect of the conditional use…;
>
> 14.2.5.7 whether satisfactory provision [has been made regarding traffic flow, parking, waste management, utilities and open spaces].

ZONING ORDINANCE, §14.2.5; R.R. 514a.

This conclusion created a presumption that Inflection's proposed use was consistent with the general welfare and safety of the public. Accordingly, the burden shifted to Neighboring Landowners to rebut that presumption. The Board held that Neighboring Landowners did not meet their burden. Neighboring Landowners expressed concerns about their property values, their drinking water quality, increased truck traffic and noise, but their concerns were based on speculation. Neighboring Landowners did not present any evidence to substantiate their concerns.

The Board approved Inflection's conditional use application, subject to 14 conditions. The conditions placed restrictions on over-weight vehicles; required the posting of the weekly schedule of over-weight vehicles; prohibited Inflection from parking vehicles on the Township's right-of-ways; required Inflection to install and maintain warning signs along Township roads to warn motorists; required Inflection to comply with Township standards for light, noise and odor; required Inflection to screen the well operations from residential properties; and required Inflection to comply with all federal, state and local permits.

**Trial Court Decision**

Neighboring Landowners appealed to the trial court, which did not take additional evidence. The trial court agreed that the proposed use was neither permitted nor denied in any zoning district in the Township and therefore was governed by the "savings clause" set forth in Section 12.18 of the Zoning Ordinance. It states:

> Whenever, under this Ordinance, a use is neither specifically permitted or denied, and an application is made by an applicant to the Zoning Officer for such a use, *the Zoning Officer shall refer the application to the Board of Supervisors to hear and decide such request as a conditional use. The Board of*

7

*Supervisors shall have the authority to permit the use or deny the use in accordance with the standards governing conditional use applications* set forth in Section 14.2 of the Ordinance. In addition, the use may only be permitted if:

12.18.1     It is similar to and compatible with other uses permitted in the zone where the subject property is located;

12.18.2     It is not permitted in any other zone under the terms of this Ordinance; and

12.18.3     It in no way is in conflict with the general purpose of this Ordinance.

The burden of proof shall be upon the applicant to demonstrate that the proposed use meets the foregoing criteria and would not be detrimental to the public health, safety and welfare of the neighborhood where it is to be located.

ZONING ORDINANCE, §12.18; R.R. 493a (emphasis added). Noting that it was Inflection's burden to satisfy each factor in Section 12.18, the trial court held that it did not do so. Accordingly, it reversed the Board's grant of the conditional use permit to Inflection.

In its reversal decision, the trial court first considered whether Inflection's proposed well was similar to other uses expressly permitted in the RA District. The trial court criticized Inflection's application as too imprecise to do this comparison. For example, Inflection was uncertain how many wells would be drilled; how much water would be used; how long it would be at the site; or whether the horizontal drilling would reach land adjacent to the Shaheens. The trial court rejected Erwin's testimony that Inflection's proposed well was similar to a public service facility. The trial court also found that Inflection's operation of four other well pads in the Township's RA District was irrelevant because Inflection did not present specific information about those other wells.

8

The trial court then considered whether Inflection's proposed well was compatible with other uses permitted in the RA District. Section 4.1 of the Zoning Ordinance states as follows:

> The purpose of the Residential Agriculture District is to encourage the continued use of the areas of the Township for rural living including open space, agricultural, and residential uses. Such uses typically do not require public utilities or community services. Uses which specify the provision of community or public utilities may be feasible in certain locations in Fairfield Township provided that the developer is able to furnish the necessary utility infrastructure.

ZONING ORDINANCE, §4.1; R.R. 410a. In addition, Section 3.1 of the Zoning Ordinance describes the RA District as follows:

> This District is generally intended for application to rural development areas where public and sewer facilities are not presently available and may not be available in the near or immediate future. *The purpose of the regulations for this district is to foster a quiet, medium-density residential environment while encouraging the continuation of agricultural activities and the preservation of prime farmland.* To this end, lot sizes are based upon the need to safeguard the health of the citizens by requiring ample space for the placement of on-lot sewage and water facilities, but yet providing for reduction of these minimum requirements where public sewer and/or water systems are developed. *Industrial uses are discouraged in this district; compatible public and semi-public uses such as schools, churches, and recreational facilities are provided for*; and higher density residential development may be permitted under certain conditions.

ZONING ORDINANCE, §3.1; R.R. 408a (emphasis added).

Noting that the RA District is intended for homes and farming, which are quiet uses, the trial court concluded that Inflection's proposed well was not a

9

compatible use. The trial court cited the number of truck deliveries that would be needed during the construction phase to deliver the gravel, the drilling rigs and installation of the water pipeline. If a pipeline was not authorized, thousands of truck deliveries would be needed to deliver water to the site. The truck traffic was expected to run 24 hours a day.

The trial court found Erwin's testimony regarding noise inconsistent. Although he stated that there would not be "much" noise, he also stated that Inflection would attempt to reduce noise. When asked whether fracking caused loud noises, Erwin stated, "It's loud, and like I have said, we will try and take care of the neighbors." R.R. 67a.

Finally, the trial court held that Inflection did not prove that its proposed use would not be detrimental to the public health, safety and welfare of the neighborhood. Neighboring Landowners flagged numerous concerns about the noise and lights generated by an operation that would run all night long and seven days a week. Gorsline's report from DEP showed that Inflection had been cited in 2013 for failing to properly control or dispose of industrial waste to prevent water pollution. Over a period of five years DEP found 600 violations at the 180 wells it inspected in Lycoming County.

The trial court granted Neighboring Landowners' appeal, nullifying the decision of the Board of Supervisors to grant Inflection a conditional use permit. Inflection appealed to this Court.

10

## Appeal

On appeal,[7] Inflection raises four issues. First it contends that the trial court erred in holding that Inflection did not prove that its well would be similar to and compatible with uses permitted in the RA District and in no way contrary to the general purpose of the Zoning Ordinance. Second, it contends that the trial court erred in holding that Inflection did not meet its burden of proving that its proposed use would not be detrimental to the health, safety and welfare of the neighborhood. Third, it contends that the trial court erred because it gave no consideration to the 14 conditions imposed by the Board. Fourth, the trial court erred by considering issues that Neighboring Landowners did not raise in the proceeding conducted by the Board.

## Conditional Use

A conditional use involves the use of the land, as opposed to the particular design details of the development. *Joseph v. North Whitehall Township Board of Supervisors*, 16 A.3d 1209, 1215 (Pa. Cmwlth. 2011). An applicant is entitled to a conditional use as a matter of right, unless it is determined "that the use does not satisfy the specific, objective criteria in the zoning ordinance for that conditional use." *In re Drumore Crossings, L.P.*, 984 A.2d 589, 595 (Pa. Cmwlth. 2009). The applicant bears the burden of establishing that the proposed conditional use satisfies the criteria in the zoning ordinance. *Id.* The zoning board is the fact-finder, with the responsibility for credibility determinations and the weight to assign the evidence. *Joseph*, 16 A.3d at 1218. Further, the zoning board's

---

[7] Where, as here, the trial court did not take additional evidence, our review is limited to determining whether the zoning board committed an error of law or abuse of discretion. *Weiser v. Latimore Township*, 960 A.2d 924, 929 n.9 (Pa. Cmwlth. 2008).

11

"interpretation of its own ordinance is entitled to great deference and weight." *Id.* at 1215.

In some circumstances, the trial court may make its own findings of fact. Section 1005-A of the Municipalities Planning Code (MPC) states as follows:

> If, upon motion, it is shown that proper consideration of the land use appeal requires the presentation of additional evidence, a judge of the court may hold a hearing to receive additional evidence, may remand the case to the body, agency or officer whose decision or order has been brought up for review, or may refer the case to a referee to receive additional evidence, provided that appeals brought before the court pursuant to section 916.1 shall not be remanded for further hearings before any body, agency or officer of the municipality. *If the record below includes findings of fact made by the governing body*, board or agency whose decision or action is brought up for review and the court does not take additional evidence or appoint a referee to take additional evidence, *the findings of the governing body, board or agency shall not be disturbed by the court if supported by substantial evidence. If the record does not include findings of fact or if additional evidence is taken by the court or by a referee, the court shall make its own findings of fact based on the record below as supplemented by the additional evidence, if any.*

53 P.S. §11005-A (emphasis added).[8]  In short, the trial court may make its own findings where it takes additional evidence or where the municipality or zoning hearing board did not make findings of fact.   Where the record contains findings of fact, the trial court may reject those findings not supported by substantial evidence.  53 P.S. §11005-A.

---

[8] Act of July 31, 1968, P.L. 805, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. §11005-A.

**Analysis**

The gravamen of Inflection's appeal is that its proposed use is similar to and compatible with uses allowed in the RA District either as a matter of right or as a conditional use. These uses range from essential services and hunting camps to parking garages, offices, funeral homes, and public service facilities. ZONING ORDINANCE, §4.2.[9] Inflection claims that its proposed well is similar to a "public service facility," which is defined as follows:

> The erection, construction, alteration, operation or maintenance of buildings, power plants or substation, water treatment plants or pumping stations, sewage disposal or pumping plants and *other similar public service structures* by a utility, whether publicly or privately owned, or by a municipal or other governmental agency, *including the furnishing of* electrical, *gas*, communication, water supply and sewage disposal services.

ZONING ORDINANCE, §2.2; R.R. 398a (emphasis added). Inflection asserts that its well will serve the general public by producing natural gas for its use and consumption. Further, the Board has already permitted four other gas well pads within the RA District, which shows that Inflection's proposed use is compatible with other uses in the RA District.

_____

[9] Section 4.2.1 states that "Agriculture," "Dwelling-Single Family Detached," "Family Based Group Home," "Family Day Care Home," "Essential Service," "Forestry Activities," "Home Occupation," and "Hunting Camp or Seasonal Dwelling" are permitted uses. ZONING ORDINANCE, §4.2.1; R.R. 410a.

Section 4.2.2 permits "Agricultural Business," "Bed and Breakfast Inn," "Day Care Center," "Multiple Family Housing Development," "Funeral Home," "Group Care Facility," "Hospital, Hospital Administration & Support Uses," "Mobile Home Park," "Nursing or Retirement, Assisted Living Facility," "Parking Lot/Parking Garage," "Professional Office," "Public or Quasi-Public Use," "*Public Service Facility*," "Recreation, Commercial," and "Recreation, Public" as conditional uses. ZONING ORDINANCE, §4.2.2; R.R. 410a-411a (emphasis added).

13

Inflection also argues that the proposed use does not conflict with the "general purposes of this [Zoning] Ordinance." ZONING ORDINANCE, §12.18.3; R.R. 493a. Indeed, Section 603(i) of the MPC requires a municipality's regulation of land use to provide for "reasonable development of minerals." 53 P.S. §10603(i). The Zoning Ordinance defines a "rural resource area" as "including … mining, quarrying and other extractive industries…." ZONING ORDINANCE, §2.2; R.R. 400a.

Neighboring Landowners counter that it was Inflection's burden to show that its natural gas development was similar to and compatible with other uses permitted in the RA District, and it did not do so. Simply establishing that other gas well pads were permitted in the RA District is not enough. Inflection had the duty to show that its gas well pad "in no way is in conflict with the general purposes of this [Zoning] Ordinance." ZONING ORDINANCE, §12.18.3; R.R. 493a. Landowners contend that Inflection did not do so.

The Township adopts the arguments of Inflection. It explains that when it enacted the Zoning Ordinance, the "Marcellus Shale and oil and gas land use was not in play." Township Brief at 17. Therefore, "the [Zoning] Ordinance is silent on oil and gas land uses." *Id*. at 18. However, the savings clause in Section 12.18 authorizes uses not expressly identified where they are similar to and compatible with other uses expressly permitted in the zoning district chosen by the applicant. The Township contends the trial court improperly substituted its judgment for that of the Board of Supervisors, which is empowered to make the relevant factual findings and to apply the Zoning Ordinance standards to the evidence. If the trial court believed that the Board was not sufficiently detailed in its analysis, the appropriate remedy was to order a remand.

Section 1005-A of the MPC permits the trial court to make its own findings where (1) it takes additional evidence or (2) "the record does not include

14

findings of fact." 53 P.S. §11005-A. In *Koutrakos v. Zoning Hearing Board of Newtown Township, Delaware County*, 685 A.2d 639 (Pa. Cmwlth. 1996), we considered what is meant by a record without findings of fact. We explained that it refers to instances where there is an order, but no decision, or where there has been a deemed approval, "which normally implies an absence of board findings." *Id.* at 641-42. Otherwise, the trial court is "precluded from making its own findings." *Id.* at 642.

In the case *sub judice*, the record contained detailed findings of fact. The trial court did not take additional evidence or confront a record absent of findings of fact. Indeed, the trial court itself claimed to be conducting appellate review. Consistent with that form of review, the trial court held that the record evidence did not support the Board's conclusion that the proposed well was similar to and compatible with uses authorized in the RA District. However, this did not give the trial court authority to act as factfinder and substitute its credibility determinations for those of the Board. Nor do we agree with the trial court's conclusion.

The principal problem with the trial court's rejection of the Board's legal conclusion is that it was based upon a narrow view of what uses are appropriate for the RA District. The Zoning Ordinance permits a wide range of conditional uses in the RA District, including forestry operations, hunting camps, hospitals, retirement homes, and commercial recreation. ZONING ORDINANCE, §4.2.2; R.R. 410a-411a. Inflection notes that in contrast to the size of a hospital, for example, a natural gas well will present a low physical profile and involve a small footprint on the land. More to the point, its proposed well is similar to a public service facility, which is expressly allowed in the RA District. Inflection notes that the Board's interpretation of its Zoning Ordinance is entitled to deference.

15

In *MarkWest Liberty Midstream & Resources, LLC v. Cecil Township Zoning Hearing Board*, 102 A.3d 549 (Pa. Cmwlth. 2014), *petition for allowance of appeal denied*, 113 A.3d 281 (Pa. 2015), the zoning board denied MarkWest's application for a special exception to operate a natural gas compressor station in the township's light industrial zoning district. Its proposed facility involved up to eight engines, surrounding sound structures, dehydration facilities, tanks, a vapor recovery unit, a flare and associated piping. The closest residence was 1,000 feet from the proposed facility. The zoning board denied the application for the stated reason that MarkWest failed to establish that its facility would be similar to other uses permitted in the zoning district or that its impact would be equal to or less than that of other permitted uses. The trial court affirmed the board.

On appeal to this Court, MarkWest argued that its compressor station had the same general character as an "essential service," which was a use permitted in the light industrial district. The zoning ordinance defined "essential service" as follows:

> *The erection, construction, alteration, or maintenance, of gas, electrical, and communication facilities*; steam, fuel, or water transmission or distribution systems; and collection, supply, or disposal systems. Such systems may include poles, wires, mains, drains, sewers, pipes, sewage treatment plants, conduits, cables, fire alarm and police call boxes, traffic signals, hydrants, and similar accessories. This definition is not intended to include private commercial enterprises such as cellular communications facilities, but only those public facilities necessary for the health, safety, and general welfare of the community.

*MarkWest*, 102 A.3d at 556 (emphasis added). The zoning board concluded that the MarkWest compressor was different from an "essential service" because it would not transmit natural gas to an "end user." *Id.* at 557. This Court rejected

16

that conclusion because the zoning ordinance did not contain such a requirement. Rather, an "essential service" was defined as "public facilities necessary for the health, safety, and general welfare of the community." *Id*. at 557. Further, the zoning ordinance defined a "public service facility" as

> [b]uildings, power plants or substations, water treatment plants or pumping stations, sewage disposal or pumping plants, and other similar public service structures used by a *public utility* ..., *whether publicly or privately owned*, or by a municipal or other government agency, including the furnishing of ... gas ... services.

*Id*. at 558-59 (emphasis in original). We concluded that MarkWest's compressor had the "same general character" as an "essential service." It was not necessary that the proposed use be the "same" as a permitted use but only that it be "similar."

*MarkWest* is directly on point. The Township's Zoning Ordinance defines a "public service facility" as follows:

> The erection, construction, alteration, operation or maintenance of buildings, power plants or substations, water treatment plants or pumping station; sewage disposal or pumping plants and other similar public service structures by a utility, whether publicly or privately owned, or by a municipal or other governmental agency, including the furnishing of electrical, gas, communication, water supply and sewage disposal services.

ZONING ORDINANCE, §2.2; R.R. 398a. Further, Section 4.2 of the Zoning Ordinance defines "essential services" as follows:

> Public utility facilities that do not require enclosure in a building, including gas, electrical, steam, telephone, or water distribution systems; and including related equipment such as poles, towers, wires, mains, sewers, pipes, conduits, cables, fire alarm boxes, police call boxes, traffic signals, hydrants and other similar equipment.

17

ZONING ORDINANCE, §2.2; R.R. 387a.

Precisely as in *MarkWest*, Inflection's proposed use satisfies the requirement set forth in 12.18.1 of the Zoning Ordinance that it "is similar to and compatible with other uses permitted in the zone where the subject property is located." ZONING ORDINANCE, §12.18.1; R.R. 493a. The evidence about Inflection's well was in no way rebutted, and the Board has already authorized Inflection's other wells in the RA District.

Proving that its proposed use is similar to and compatible with uses expressly permitted in the RA District is not dispositive. Inflection also had the burden to show that its proposed use does not "conflict with the general purposes of this [Zoning] Ordinance." ZONING ORDINANCE, §12.18.3; R.R. 493a. Again, its evidence was uncontradicted. Inflection argues that its well will not conflict with the general purpose of the Zoning Ordinance, which expressly authorizes the extraction of minerals.[10] ZONING ORDINANCE, §§12.18.1, 12.18.3; R.R. 493a.

In holding otherwise, the trial court conflated the general purpose of the Zoning Ordinance with the requirement that the proposed use be similar to and compatible with other uses allowed in the RA District. The trial court also erred in focusing on the truck deliveries during the construction phase of the project because "[z]oning regulates the *use* of land and not the particulars of development and construction." *In re Thompson*, 896 A.2d 659, 671 (Pa. Cmwlth. 2006).

We hold that Inflection's proposed use met the threshold requirements set forth in Sections 12.18.1 and 12.18.3 of the Zoning Ordinance. It is similar to and compatible with the uses permitted in the RA District and does not conflict with the general purpose of the Zoning Ordinance.

---

[10] *See* ZONING ORDINANCE, §2.2; R.R. 400a (defining a "rural resource area" as "including ... mining, quarrying and other extractive industries ....").

18

In its second issue, Inflection argues that the trial court erred in concluding that it did not prove that its natural gas well would "not be detrimental to the public health, safety and welfare of the neighborhood where it is to be located." ZONING ORDINANCE, §12.18; R.R. 493a. Inflection presented expert testimony on that issue, which the Board accepted. Neighboring Landowners presented no evidence to the contrary.

Neighboring Landowners claim that the Township did not do its job. They claim that the Township failed to obtain meaningful information from Inflection about the storage and transportation of chemicals and wastewater and the impact the well would have on the environment. They assert that "the record" contains evidence that Inflection's activities will constitute a nuisance and have a noxious effect on the surrounding area due to noise, light, and traffic impacts. Neighboring Landowners' Brief at 47. However, they do not cite where in the record this evidence is to be found.

Inflection's oil and gas engineering expert, Thomas Erwin, testified that once the gas well is constructed and drilling completed, its operation will not create noise, light glare or odors noticeable to Township residents. Inflection's director of regulatory and environmental affairs, Thomas Gillespie, testified that Inflection's erosion and control plan had been approved by DEP. The plan addressed storm water runoff, erosion, sediment transport and the water to be used for fracking. He testified that the gas well would be drilled far below the subsurface water that serves Neighboring Landowners' wells.

The Board accepted this testimony. The Board acknowledged that Neighboring Landowners expressed concerns but concluded that their "speculation of possible harms" was insufficient to show that the proposed natural gas well will be detrimental to the health, safety and welfare of the neighborhood. *Sunnyside Up Corporation v. City of Lancaster Zoning Hearing Board*, 739 A.2d 644, 650 (Pa.

19

Cmwlth. 1999). *See also Rural Area Concerned Citizens, Inc. v. Fayette County Zoning Hearing Board*, 646 A.2d 717, 723 (Pa. Cmwlth. 1994) (objectors' arguments that proposed quarry would have detrimental effect on community did not constitute substantial evidence that quarry use would affect health and safety of community).

Nevertheless, the Board responded to the concerns of Neighboring Landowners by imposing numerous conditions related to roadway maintenance, traffic and parking. It also required Inflection to provide emergency contact information upon request, visually screen the well from the neighborhood and comply with all federal state and local permits and approvals. Specifically, the Board stated:

> Contingent upon the protections afforded by the conditions attached to the approval of [Inflection's] conditional use request, the [Board] finds that the criteria for review set forth in Sections 12.18, 14.2.5 and 12.1 have been sufficient[ly] satisfied in that the application as submitted by [Inflection] with the imposed conditions meets the requirements of the Ordinance for conditional use approval, the site selected is generally appropriate for the proposed uses, and no evidence was offered that there would be any adverse impacts to the surrounding neighborhoods or negative impacts to adjoining properties that are not appropriately mitigated by the attached conditions.

Board Decision, Conclusion of Law No. 20.

The questions asked by Neighboring Landowners did not constitute probative evidence that Inflection's natural gas well would be harmful to the health, welfare and safety of the neighborhood. No evidence rebutted the evidence presented by Inflection. Accordingly, the trial court erred in holding that

20

Inflection's proposed well would present a detriment to the health and safety of the neighborhood.

### Conclusion

The trial court erred in holding that Inflection's proposed use was not *similar to* a public service facility, which is expressly permitted in the RA District and compatible with other uses permitted in the RA District. The trial court also erred in holding that Inflection's proposed use conflicted with the general purpose of the Zoning Ordinance, which specifically authorizes extraction of minerals. Finally, there was no probative evidence offered to show that Inflection's proposed well will present a detriment to the health and safety of the neighborhood. Inflection satisfied the requirements of Section 12.18 of the Zoning Ordinance.

For these reasons we reverse the order of the trial court.[11]

_____
MARY HANNAH LEAVITT, Judge

---

[11] Inflection asserted that the trial court erred by stating it could consider additional claims raised by Neighboring Landowners that were not raised before the Board. Those issues concerned whether a gas well was permitted in the commercial zoning district and whether the gas well pad impacted on Neighboring Landowners' constitutional rights. The trial court found in favor of Inflection on the first issue and reached no decision on the second. The constitutional claim was that the proposed use violated Neighboring Landowners' right of "enjoying and defending life and liberty, [and] of acquiring, possessing and protecting property," as expressed in Article I, Section 1 of the Pennsylvania Constitution, and their right to "clean air, pure water and ... the preservation of the … environment," as guaranteed to all citizens in Article I, Section 27 of the Pennsylvania Constitution. PA. CONST. Art. I, §§1, 27. This claim presumed that the proposed use was not compatible with permitted uses in the RA District and would cause environmental harm. Because the record supports the Board's determination that Inflection's proposed use is compatible with the permitted uses in the RA District and no evidence of harm was presented, Neighboring Landowners' claims are unsupported by the accepted evidence of record.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brian Gorsline, Dawn Gorsline,   :
Paul Batkowski and Michele   :
Batkowski   :
  :
      v.   :  No. 1735 C.D. 2014
  :
Board of Supervisors of Fairfield   :
Township   :
  :
      v.   :
Inflection Energy, LLC and   :
Donald Shaheen and   :
Eleanor Shaheen, his wife,   :
         Appellants   :

## **O R D E R**

AND NOW, this 14th day of September, 2015, the order of the Court of Common Pleas of Lycoming County, dated August 29, 2014, is REVERSED.

_____
MARY HANNAH LEAVITT, Judge