[J-13-2017] [MO: Donohue, J.]

**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**


| | |
|---|---|
| BRIAN GORSLINE, DAWN GORSLINE, PAUL BATKOWSKI AND MICHELE BATKOWSKI | No. 67 MAP 2016 |
| | Appeal from the Order of the Commonwealth Court dated September 14, 2015 at No. 1735 CD 2014 Reversing the Order of the Lycoming County Court of Common Pleas, Civil Division, dated August 29, 2014 at No. 2014-0130. |
| v. | |
| BOARD OF SUPERVISORS OF FAIRFIELD TOWNSHIP | |
| | ARGUED: March 8, 2017 |
| v. | |
| INFLECTION ENERGY, LLC AND DONALD SHAHEEN AND ELEANOR SHAHEEN, HIS WIFE | |
| APPEAL OF: BRIAN GORSLINE, DAWN GORSLINE, PAUL BATKOWSKI AND MICHELE BATKOWSKI | |


**DISSENTING OPINION**


**JUSTICE DOUGHERTY**                    **DECIDED: June 1, 2018**

My review of the record reveals there was sufficient evidence to support the decision of the Fairfield Township Board of Supervisors (the "Board") to allow the conditional use in this case. Therefore, I must respectfully dissent.[1]

---

[1] I also disagree with the majority's decision not to address the first issue we accepted for review in this appeal, *i.e.*, whether the Commonwealth Court's reinstatement of the Board's approval of a shale gas well as a conditional use in an R-A district conflicts with

In a case like this one, where the common pleas court did not take additional evidence, appellate review is limited to determining whether the Board abused its discretion or erred as a matter of law, and we may not disturb the Board's fact findings if they were supported by substantial evidence. *See* 53 P.S. §11005-A (if record includes findings of fact made by governing body whose action is brought up for review and court does not take additional evidence, findings of governing body shall not be disturbed if supported by substantial evidence); *Visionquest Nat'l, Ltd. v. Bd. of Supervisors of Honey Brook Twp.*, 569 A.2d 915, 918 (Pa. 1990) ("appropriate scope of review for this Court, in a denial of conditional use permit, is limited to whether an abuse of discretion or an error of law has been committed"). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Valley View Civic Ass'n v. Zoning Bd. of Adjustment*, 462 A.2d 637, 640 (Pa. 1983). In such a case, the Board is the fact-finder and the "sole judge of credibility" and the weight of evidence in conditional use proceedings. *Nettleton v. Zoning Bd. of Adjustment of the City of Pittsburgh*, 828 A.2d 1033, 1041 n.10 (Pa. 2003).

Under Section 12.18.1 of the Fairfield Township Zoning Ordinance of 2007 (the "Ordinance"), Inflection Energy, LLC ("Inflection") was required to show the proposed gas well was "similar to and compatible with other uses permitted" in the R-A district in order

---

this Court's seminal decision in *Robinson Township v. Commonwealth*, 83 A.3d 901 (Pa. 2013). *See Gorsline v. Bd. of Supervisors of Fairfield Twp.*, 139 A.3d 178 (Pa. 2016) (*per curiam*). I recognize courts usually avoid determining the constitutionality of statute, if other grounds are available to resolve the issue. *Commonwealth v. Janssen Pharmaceutica, Inc.*, 8 A.3d 267, 271 (Pa. 2010) ("[I]t has long been the policy of this Court to avoid constitutional questions where a matter can be decided on alternative, non-constitutional grounds.") (citations omitted). Here, however, we have not been asked to opine on the constitutionality of a statute, ordinance, or regulation, but rather the applicability and scope of our prior decision in *Robinson Township* to the facts before us. In my view, this important question was the sole issue of first impression accepted by the Court, and the remaining issues decided today involve mere error review, which is generally not this Court's function. *See generally* Pa.R.A.P. 1114.

to obtain a conditional use permit.  FAIRFIELD TWP. ZONING ORDINANCE, §12.18.1. Although Inflection's expert testimony could have been more precise, Thomas Erwin, Inflection's expert witness, did state the proposed gas well is similar to a public service facility, which is expressly listed as a conditional use in the R-A district.  FAIRFIELD TWP. ZONING ORDINANCE, §4.2.2.16.  Erwin testified that although the proposed Shaheen Pad would not be precisely classified as a public service facility it nevertheless fits the definition.[2]  Notes of Testimony ("N.T.") 10/7/2013 at 8.  The Board concluded this evidence of similarity — together with the rest of the record and its own expertise and knowledge of other R-A district uses — was sufficient to support the conditional use permit.  *See, e.g.,* Board Op., Conclusions of Law ¶18 ("Given that [*sic*] nature of the proposed oil and gas well pad use as detailed in [Inflection's] Application, provided [Inflection] fully complies with the materials provided in its Application and constructs its well pad as detailed in the Application, the Board of Supervisors believe it appropriate to approve the Application subject to the following conditions as set forth in Paragraph [1]9

---

[2]  The Ordinance defines "public service facility" as:

> The erection, construction, alteration, operation or maintenance of buildings, power plants or substations, water treatment plants or pumping stations; sewage disposal or pumping plants and other similar public service structures by a utility, whether publicly or privately owned, or by a municipal or other governmental agency, including the furnishing of electrical, gas, communication, water supply and sewage disposal services.

FAIRFIELD TWP. ZONING ORDINANCE, §2.2.

Additionally, the Ordinance defines "essential service" as:
> Public utility facilities that do not require enclosure in a building, including gas, electrical, steam, telephone, or water distribution systems; and including related equipment such as poles, towers, wires, mains, sewers, pipes, conduits, cables, fire alarm boxes, police call boxes, traffic signals, hydrants, and other similar equipment.

*Id.*

below."); *Id.* at ¶19(l) ("The conditional use approval is contingent upon compliance with all design standards and specifications set forth in Application and/or as otherwise testified to during hearing including but not limited to representations regarding light, noise and odor.").

The common pleas court vacated, reversed and set aside the Board's decision, concluding Erwin's testimony regarding the similarity of the proposed use to a public service facility was "arguably inconsistent." *Gorsline v. Bd. of Supervisors of Fairfield Twp.*, 40 Pa.D.&C.5th 478, 489 (C.P. Lycoming 2014). The Commonwealth Court reversed on the basis that the common pleas court improperly acted as the factfinder and substituted its credibility determination for that of the Board. *Gorsline v. Bd. of Supervisors of Fairfield Twp.*, 123 A.3d 1142, 1151 (Pa. Cmwlth. 2015).

The learned majority maintains the Commonwealth Court erred because the common pleas court did not substitute its own credibility determinations for that of the Board. The majority further opines the Board did not make a specific credibility determination regarding this portion of Erwin's testimony, and further, the common pleas court did not actually make any credibility determinations, but merely concluded the "contradictory nature" of Erwin's testimony did not provide substantial evidence to support the Board's decision. Majority Opinion, slip op. at 16-17. However, a careful reading of the Board's decision reveals that, in reaching its legal conclusion Inflection satisfied "the criteria set forth in Sections 12.18," Board Op., Conclusions of Law ¶20, the Board did not reject Erwin's testimony — and instead implicitly accepted it. *Nettleton*, 828 A.2d at 1041 n.10 (Board is fact-finder and "sole judge of credibility" and weight of evidence in land use proceedings). In my view, and as correctly observed by the Commonwealth Court, the common pleas court inserted itself as the factfinder substituting its own judgment regarding the weight and persuasiveness of Erwin's testimony by characterizing

Erwin's testimony as "arguably inconsistent." Such action is inconsistent with the applicable standard of review.[3] *Visonquest*, 569 A.2d at 918 (trial court's standard of review of Board's decision, where court does not take additional evidence, is limited to determining whether there was an abuse of discretion or error of law). *See also Nettleton*, 828 A.2d at 1041 n.10 (Board is fact-finder and "sole judge of credibility" and weight of evidence in land use proceedings).

Additionally, the majority improperly reduces the evidence available to the Board regarding the proposed use to a short colloquy between Erwin and Inflection's lawyer. Majority Opinion, slip op. at 16-17, *citing Gorsline*, 40 Pa.D.&C.5th at 489 (quoting N.T. 10/7/2013 at 8). The majority ignores the substantial documentary evidence also submitted by Inflection including its Project Statement, the Shaheens' Oil & Gas Lease Assignments, Department of Environmental Protection (DEP) Erosion and Sediment Control Plan, Post-Construction Stormwater Plan and Antidegradation Analysis (ESCGP-2) Application, ESCGP-2 Drawings, DEP Preparedness Prevention and Contingency Plan, DEP Permit Application to Drill and Operate an Unconventional Well, an aerial photographic plat depicting water wells within 3000 feet of the proposed well pad, as well as the testimony of Thomas B. Gillespie, a professional geologist and Inflection's director of regulatory affairs. This additional evidence, in conjunction with the Board's knowledge and expertise regarding other uses and conditions existing in Fairfield Township, form the basis for the Board's conclusion Inflection met its burden. *See Marshall v. City of Philadelphia*, 97 A.3d 323, 332-33 (Pa. 2014) ("Based on the record before it, as well as

---

[3] The majority dismisses Erwin's testimony on the ground that it constituted "lay opinion" elicited "in response to leading questions that sought legal conclusions." Majority Opinion, slip op. at 17 n. 11. I note Section 554 of the Local Agency Law, 2 Pa.C.S. §554, specifically provides "[l]ocal agencies shall not be bound by technical rules of evidence at agency hearings, and all relevant evidence of reasonably probative value may be received…." As a practical matter, local agency hearings such as a conditional use hearing are more informal in nature than the typical adversarial proceeding.

its expertise in and knowledge of local conditions, the ZBA was certainly entitled to infer that the building could not be used for any permitted purpose without major, prohibitively expensive renovation."); *Huntley & Huntley, Inc. v. Borough Council of the Borough of Oakmont*, 964 A.2d 855, 866 (Pa. 2006) (local zoning laws recognize and reflect "the unique expertise of municipal governing bodies to designate where different uses should be permitted in a manner that accounts for the community's development objectives, its character" and special nature of particular parts of community); *Southco, Inc. v. Concord Twp.*, 713 A.2d 607, 609 (Pa. 1998) ("Whether a proposed use, as factually described in an application or in testimony, falls within a given category specified in zoning ordinance is a question of law."); *Luke v. Cataldi*, 932 A.2d 45, 53 (Pa. 2007) (the issuance of conditional use permits requires individual determination made upon consideration of specified standards and criteria).[4]

In reaching the opposite conclusion based on the record before the Board, the majority relies upon *Crown Communications v. Zoning Hearing Board of the Borough of Glenfield*, 705 A.2d 427 (Pa. 1997), to bolster its position the proposed gas wells are not of the "same general character" as any use permitted in the R-A district. The majority's reliance upon *Crown Communications* is misplaced. In that case, this Court granted allocatur to determine "whether private business entities may be considered public utilities for zoning purposes when the applicable zoning ordinances do not define 'public utility.'" 705 A.2d at 429, 430-431. It was necessary to answer that question because the ordinance in *Crown Communications* required the permit applicant to be a "public utility,"

---

[4] To the extent the Board's awareness of Inflection's other wells in the Township impacted its conditional use decision in this case, the prior approvals could ostensibly form part of the Board's knowledge and expertise in local conditions, development patterns, the benefits and detriments of gas production, and the necessary and appropriate conditions that should be imposed upon an applicant; all of these factors properly lie within the Board's consideration. *Marshall,* 97 A.3d at 332-33; *Huntley*, 964 A.2d at 866.

which was an undefined term. The Court set forth a test for determining whether an applicant qualifies as a public utility, when the ordinance fails to provide a definition. Unlike the *Crown Communications* ordinance, the Ordinance at issue here does not require the applicant to qualify as a public utility and the Board's interpretation of its own Ordinance is entitled to deference in this regard. *See* FAIRFIELD TWP. ZONING ORDINANCE, §2.2; *Broussard v. Zoning Bd. of Adjustment*, 907 A.2d 494, 500 (Pa. 2006); ("courts ordinarily grant deference to the zoning board's understanding of its own ordinance").

Respectfully, the majority also misapprehends the object of the "similar to" analysis. The American Heritage Collegiate Dictionary (3rd Ed. 2000) at 1270 defines "similar" as "[r]elated in appearance or nature; alike though not identical." The proposed use need not be expressly classified as one of the uses listed in the Ordinance. Rather, the proposed use must be "similar to" other uses permitted in the district. The phrase "similar to" does not mean "the same as," and the requirement of "similarity" does not mandate that the proposed use be identical to the definitions included in the Ordinance.[5] Similarity requires only that the proposed use be related in nature to other uses permitted

---

[5] Indeed, Erwin's expert testimony can be viewed as inartfully making this exact point: the proposed well is not expressly "classified" as a permitted use in the R-A district, but it "fits the definition" in the sense it is similar to one of those uses. N.T. 10/7/2013 at 8. Specifically, Erwin testified as follows:

Q: And what is the proposed use in that district? What do you plan on --

A: Oil and gas development.

Q: And is that proposed use classified as a public service facility under the ordinance?

A: No.

Q: It fits the definition as a public service facility under the Fairfield Township Zoning Ordinance, is that correct?

A: Yes.

*Id.*

in the RA-district. In this case, the proposed use is intended to provide natural gas for public consumption in a manner similar to a public service facility which furnishes gas services. *See Swift v. Zoning Hearing Bd. of Abington Twp.*, 328 A.2d 901, 902-03 (Pa. Cmwlth. 1974) (because "similar use" is undefined, permissive nature of phrase requires that it be taken in its broadest sense). But there is nothing in the definition of either public service facility or essential service which requires that an applicant transmit natural gas directly to the end user in order to qualify for a conditional use permit. To assert otherwise would require this Court to impermissibly read words into the Ordinance. 1 Pa.C.S. §1921(b).

Moreover, in my view, the majority's reading of the Ordinance is unduly restrictive. Section 12.18.1 requires the Board to determine whether the proposed gas well is similar to and compatible with other uses permitted in the R-A district, but it does not require the Board to identify which of those uses it considers similar and compatible. The Board is authorized to consider all the possible uses allowed in the district either as permitted uses or conditional uses. 53 P.S. §10603.1 (zoning ordinance language shall be interpreted in favor of property owner and against implied extension of restriction). The majority is correct that Section 3.1 of the Ordinance states the purpose of regulations for the R-A district is to "foster a quiet, medium-density residential environment while encouraging the continuation of agricultural activities and the preservation of prime farmland." FAIRFIELD TWP. ZONING ORDINANCE, §3.1. However, other parts of the Ordinance such as Sections 2.2, 4.1 (Purpose of the R-A District), and 4.2 (Permitted Uses and Conditional Uses) provide additional guidance which should also inform our interpretation. *Latimore Twp. v. Latimore Twp. Zoning Hearing Bd.*, 58 A.3d 883, 887 (Pa. Cmwlth. 2013) ("A zoning ordinance should be construed so that none of its language is superfluous."); *Anter*

*Assocs. v. Zoning Hearing Bd. of Concord Twp.*, 17 A.3d 467, 469 (Pa. Cmwlth. 2011) ("[W]e must attempt to construe a zoning ordinance to give effect to all its provisions.").

For example, Section 4.2 allows a wide variety of uses in the R-A district which are neither residential nor agricultural uses *per se*, such as forestry activities, essential service facilities, public or quasi-public uses, public service facilities, hospitals, hospital administration and support services, nursing or retirement facilities, professional offices, and commercial recreation. And, rather than being placed within an exclusively residential subdivision, this particular gas well would be located on a nearly sixty-acre parcel, which is currently used and will continue to be used for farming, there is only one residence within 1000 feet, and the remainder of the residences within 3000 feet are separated from the well location by terrain which contains two streams, wetlands, and is rolling and forested in sections. *See* N.T. 10/7/2013 at 10-11 (describing area in vicinity of proposed gas well). One of the stated purposes of the R-A district is to encourage development that does not require the installation of public facilities such as water or sewer services, FAIRFIELD TWP. ZONING ORDINANCE, §4.1, and utility infrastructure is not needed for operation of the proposed gas well. Moreover, Section 4.1 of the Ordinance should be read together with Section 2.2, which addresses rural resource areas, and which is a type of zoning district or an overlay district; it is not a "use" as stated by the majority. Majority Opinion, slip op. at 11 n. 8. A rural resource area exists where public infrastructure services are not provided but where agriculture, timbering, mining, quarrying and other extractive activities may occur. FAIRFIELD TWP. ZONING ORDINANCE, §2.2. Given the explicit authorization of agricultural and forestry activities and the lack of

public infrastructure in the district, in my view, it is reasonable to consider the R-A district as analogous to a rural resource area.[6]

---

[6] Moreover, this Court has not ruled that natural gas development is always inherently incompatible with residential uses. *See, e.g.*, *Huntley,* 964 A.2d at 866-68 (borough council improperly denied conditional use permit for natural gas well on ten-acre parcel in R-1 (single family residential) district, when ordinance authorized extraction of natural gas as conditional use in that district). In addition, the General Assembly has recognized that gas development is not *per se* incompatible with agricultural uses. *See, e.g.,* Section 914.1(c)(6)(i) of the Agricultural Area Security Law, 3 P.S. §914.1(c)(6)(i) ("An agricultural conservation easement shall not prevent: . . . [t]he granting of leases . . . or the issuing of permits . . . for the exploration, development, storage or removal of . . . oil and gas by the owner of the subject land . . . ."); Section 6(c.1)(1) of the Pennsylvania Farmland and Forest Land Assessment Act of 1974, 72 P.S. §5490.6(c.1)(1) ("Land subject to preferential assessment may be leased or otherwise devoted to exploration for and removal of gas and oil . . . .").

Nor does *Robinson Township* preclude the conditional use the Board permitted here. In fact, one of the plurality opinion's central holdings invalidated Section 3304(b) of the Oil and Gas Act of 2012, 58 Pa.C.S. §3304(b), which mandated the allowance of a specific land use (oil and gas operations) in all areas of the state without regard for local conditions that may make such use incompatible with existing uses, and thus violate citizens' constitutional rights. 83 A.3d at 979. In doing so, the Court emphasized protection of environmental values is a "quintessential local issue that must be tailored to local conditions." *Id.* The Court explained that, by requiring municipalities to permit certain uses everywhere, the legislature removed "local government's necessary and reasonable authority to carry out its trustee obligations by prohibiting the enactment of ordinances tailored to local conditions." *Id.* at 982 n.58.

Appellants claim *Robinson Township* held natural gas development is inherently incompatible with residential uses and its impacts can never be mitigated through the imposition of conditions, but, in my view, appellants read *Robinson Township* too broadly in this regard. Appellants' interpretation would supersede existing local ordinances, which specifically allow natural gas development as a permitted use, conditional use, or as a special exception in residential and mixed use zones under specifically enumerated legislative provisos, designed to take into account actual "conditions on the ground" in those places. Such an interpretation frustrates the purpose of the Municipalities Planning Code, which authorizes municipalities to develop local zoning ordinances. *See, e.g.*, 53 P.S. §10603.1 (where doubt exists as to extent of land use restriction, local ordinances should be interpreted in favor of property owner).

Pursuant to this legislative scheme, the Board designed, adopted, and enacted its Ordinance describing the R-A District — "[i]n consideration of the character of the municipality, its various parts and the suitability of the various parts for particular uses and structures." FAIRFIELD TWP. ZONING ORDINANCE, §1.4.1. The expressed purpose of

Although Section 3.1 of the Ordinance states "[i]ndustrial uses are discouraged" in the R-A district, industrial uses are clearly not forbidden. Pursuant to the Ordinance, the proposed use is a gas well — not the temporary construction and drilling activities which are necessary to establish that use, and which may be characterized as "industrial" in nature. *In re Thompson,* 896 A.2d 659, 671 (Pa. Cmwlth. 2006) ("Zoning only regulates the **use** of land and not the particulars of development and construction.") *quoting Schatz v. New Britain Twp. Zoning Hearing Bd. of Adjustment*, 596 A.2d 294, 298 (Pa. Cmwlth. 1991) (emphasis in original). Inflection presented evidence (apparently believed by the Board) that once construction is completed the proposed gas wells are essentially a passive use. Evidence indicated one pickup truck per week would visit the gas well once it is in operation, the well pad itself would measure 150 feet by 150 feet with one small building on it, and the existing agricultural use would continue on the remainder of the parcel.

The question before the Board in conditional use proceedings is whether the planned ultimate use is "consistent with the public interest as defined in the standards established." 1 Ryan, *Pennsylvania Zoning Law and Practice*, §5.1.8 (2001). *See also Luke,* 932 A.2d at 53 (issuance of conditional use permits requires individual determination made upon consideration of specified standards and criteria). Zoning

the Ordinance is to promote the "public's health, safety, morals, and the general welfare, [and] encourage the most appropriate use of land…." *Id.*, §1.4.2. In the conditional use context, these land use goals are attained when a governing body determines — through its zoning hearing process — the applicant has either satisfied or not satisfied the particular requirements included in a zoning ordinance for the grant of a conditional use permit. In this case, Inflection was obligated under the Ordinance to satisfy the particular requirements found in Sections 14.2 and 12.1 relating to conditional uses, to demonstrate under Section 12.18 its proposed gas well was similar to and compatible with other uses permitted in the R-A district, and also that the gas well in no way conflicted with the general purpose of the Ordinance. Under the circumstances presented here, where I view the record as sufficient to support the Board's decision, I would find no conflict between the Commonwealth Court's decision and *Robinson Township.*

ordinances are to be construed liberally and interpreted broadly to allow the widest possible use of land. *Southco,* 713 A.2d at 609; *Upper Salford Twp. v. Collins*, 669 A.2d 335, 336 (Pa. 1995).

In this case the Board decided the proposed use was similar to and compatible with other uses permitted in the R-A district, although it did not specify a particular use permitted in the R-A district to which the proposed gas well was similar. Board Op., Conclusions of Law ¶20 ("criteria for review set forth in Sections 12.08, 14.2.5 and 12.1 have been sufficient[ly] satisfied in that the application as submitted by the Applicant with the imposed conditions meets the requirements of the Ordinance for conditional use approval"). The majority considers this misstep by the Board as fatal to its decision. However, the Commonwealth Court reached its own more specific legal conclusion based on the very same record adduced before the Board. The Commonwealth Court examined the language of the Ordinance's definitions of "public service facility" and "essential service," both of which encompass natural gas-related uses and structures, and determined the proposed gas well was similar to other uses permitted in the R-A district. *Gorsline*, 123 A.3d at 1152.

In concluding the proposed development, as modified by the Board's conditions, was generally similar to and compatible with other uses permitted in the R-A district, the Board recognized the district does not only authorize strictly residential and agricultural uses but also a wide variety of other uses such as forestry activities, recreational facilities, including theatres and go-cart tracks, office buildings, hospitals, and public service facilities that furnish electric, gas and sewage services. The Commonwealth Court acknowledged the proposed gas well was not the "same as" a public service facility, but was similar because it was of the same general character as a public service facility. *Gorsline*, 123 A.3d at 1152; 53 P.S. §10603.1 ("In interpreting the language of zoning

ordinances to determine the extent of the restriction upon the use of the property, the language shall be interpreted, where doubt exists as to the intended meaning of the language written and enacted by the governing body, in favor of the property owner and against any implied extension of the restriction."). In my view, the Commonwealth Court was correct and, applying the proper standard of review, I would affirm its determination the Board did not err in granting Inflection's application.[7]

Justices Baer and Mundy join.

---

[7] Respectfully, the majority's suggestion the Board may allow the proposed use in the R-A district only by amending its Ordinance is incorrect. *See* Majority Opinion, slip op. at 23-24. Section 12.18 of the Ordinance, which is known as a "savings clause," authorizes approval of uses that are neither specifically permitted nor denied by the Ordinance as conditional uses where certain criteria are met. Nothing in the Municipalities Planning Code precludes approval under such a conditional use scheme.