IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sweetwater Hamilton Township, PA, LLC,  :
                                          Appellant :
                                                :
           v.                            :   No.  1302 C.D. 2021
                                                :   Submitted:  September 15, 2022
Hamilton Township Zoning Hearing Board  :
and Hamilton Township               :


BEFORE:   HONORABLE ANNE E. COVEY, Judge
               HONORABLE ELLEN CEISLER, Judge
               HONORABLE STACY WALLACE, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WALLACE                      FILED: October 19, 2022


Sweetwater Hamilton Township, PA, LLC (Sweetwater) appeals from the October 12, 2021 order of the Court of Common Pleas of Monroe County (Common Pleas) denying Sweetwater's appeal of the Hamilton Township Zoning Hearing Board's (ZHB) March 2, 2021 order, which denied Sweetwater's appeal of the Hamilton Township Zoning Officer's (Zoning Officer) August 4, 2020 enforcement notice (Enforcement Notice) citing Sweetwater for several violations of Hamilton Township's Zoning Ordinance (Zoning Ordinance).[1]  Upon review, we affirm.

## I.      Background

Sweetwater is the owner of an approximately 30-acre tract of land in Hamilton Township, Monroe County, Pennsylvania (the Property) that is zoned residential

---

[1] Hamilton Twp., Pa. Zoning Ordinance (1976), *as amended*.

under the Zoning Ordinance. Original Record (O.R.), Item No. 13, Exhibit A, Transcript of ZHB Hearing, 11/10/20 (T.1) at 28. Thomas Blanchet (Blanchet), who lives and operates a recycling center in Freehold, New Jersey, solely owns Sweetwater. O.R., Item No. 13, Exhibit B, Transcript of ZHB Hearing, 1/12/21 (T.2) at 152; T.1 at 77. When Sweetwater purchased the Property in 2012, Blanchet thought the Property was a commercial property and "a **former** scrapyard." T.2 at 157 (emphasis added). He reached this conclusion because of "the evidence of scrapyard activities by the foundation for a scale." *Id.* at 166.

After purchasing the Property, Blanchet permitted Joseph Kennedy (Kennedy), who owns an adjoining property with an active scrapyard, to utilize the Property and retain any proceeds that he realized from operations on the Property. T.2 at 170-72. In exchange, Kennedy was cleaning the Property, by removing buried metal and tires, at no cost to Sweetwater. *Id.* at 172. Blanchet and Kennedy's agreement was only an oral agreement. *Id.* at 171. Blanchet, who only visited the Property six times during the eight and one-half years of his ownership, admitted that the equipment (excavators, etc.) and trailers on the Property belonged to Kennedy, and that he was not aware of Kennedy's day-to-day operations. *Id.* at 171-76.

Kennedy explained that when Sweetwater purchased the Property, it had a lot of junk buried on it (metal and tires), such that it appeared to be an "**abandoned** junk yard." T.1 at 68 (emphasis added). Kennedy claimed that his operations on the Property were limited to cleaning up metal and tires that were already on the Property at the time of Sweetwater's purchase. *See id.* at 67-68, 73; T.2 at 101. Kennedy explained that he took those materials to his property where he had an "operating scale," which was a necessary piece of equipment to process material in

2

a scrapyard. *Id.* at 125. Kennedy also explained that his intentions were to finish cleaning the Property and then use it as a scrapyard or a recycling yard. T.1 at 73. Despite these claims, Kennedy admitted he "may store some stuff" on the Property "while we bring it across the street to process it," and "I guess you could say" we brought some junk materials onto the Property. T.2 at 101, 102. In addition, Kennedy admitted that he (a) parked trailers, which he used in the operation of his junk yard across the street, on the Property; (b) loaded trailers with metal, which he used in the operation of his junk yard across the street, on the Property; (c) stored a steel building, which he was "building to be erected at some point in time," on an unlicensed trailer on the Property for the past "four or five years[;]" and (d) placed an inoperable front-end loader on the Property, which had been there for the past year or two. *Id.* at 103, 108, 114, 115-17.

Brian Potcher (Potcher), who lives approximately 1,000 feet from where Kennedy was conducting operations on the Property, stated that he observed a lot more activity on the Property than Kennedy admitted. T.2 at 180. Potcher stated that over the past two years, he observed "an incredible amount of activity" on the Property, including "[e]xcavators, loaders, [and] some sort of conveyor that's processing something." *Id.* at 181-82. Potcher said that the activity was loud, and that it was occurring on a daily basis, from approximately 6:00 a.m. or 7:00 a.m. until dark. *Id.* at 183. He also testified that the activity decreased in August of 2020. *Id.* at 182.

In early August 2020, Zoning Officer observed what he believed to be a junk yard on the Property. T.1 at 27-28. On August 4, 2020, Zoning Officer issued Enforcement Notice to Sweetwater, wherein, he alleged that Sweetwater was storing building materials, used machinery, vehicles, and trailers on the Property, which are

uses that the Zoning Ordinance permits in industrial zones, not residential zones. O.R., Item No. 13, Exhibit A-1 at 6-7.

Sweetwater appealed the Enforcement Notice to the ZHB. In its appeal, Sweetwater asserted that "[t]he property was/is a prior non-conforming use that was not abandoned. Owner has invested substantial resources into property cleanup to conduct junk yard responsibly." O.R., Item No. 13, Exhibit A-1 at 2. The ZHB held hearings on Sweetwater's appeal on November 10, 2020 and January 12, 2021.

In addition to the testimony outlined above, the ZHB received evidence of the historical uses of the Property. Dale Chan (Chan), who has been a tow truck driver in Monroe County for approximately the past 30 years, testified that he began living in a trailer that he placed on the Property in 1986. T.1 at 52-53. Chan, who was working for the owner while he lived on the Property, testified that he used the Property as an automotive scrapyard and that the prior owner had been operating it as a junk yard. *Id.* at 53-54. When Chan started, there was not an operational scale on the Property, as the owner added that while he worked there. *Id.* at 52. Chan continued to live and work on the Property into the early 1990s. *Id.* at 54.

Andrew Phillips, who was formerly an automobile salvager, testified that he took scrap metal to the Property between approximately 1983 and 1994. T.1 at 60-62. During this time, the owner was operating the Property as a scrapyard and there was a large scale on the Property that the owner used to weigh vehicles to process scrap metal. *Id.* at 62-63.

Cindy Treible (Mrs. Treible), who owned the Property from 2003 to 2012, testified that she and her now-deceased husband (Mr. Treible) purchased the Property at a tax sale in 2003. T.1 at 36-38, 42. At the time of their purchase, Mr. Treible, who repossessed vehicles for a living, intended to use the Property as a yard

4

for vehicles that he repossessed. *Id.* at 39-40. Shortly after they bought the Property, however, Zoning Officer informed Mr. and Mrs. Treible (the Treibles) that they could not use the Property in this manner. *Id.* The Treibles did not apply for a variance, nor did they utilize the Property as they originally intended. *Id.* Instead, Mr. Treible "sold the scale that you drive across" that was on the Property. *Id.* at 40. Thereafter, Mr. Treible became ill, and Mrs. Treible used the 48′ by 60′ steel building on the Property to store Mr. Treible's business equipment. *Id.* at 40-41. During their roughly nine years of owning the Property, the Treibles did not operate the Property as a junk yard or scrapyard. *Id.* at 43.

Zoning Officer, who has held his position since 2001, testified that he reviewed Hamilton Township's historical records related to the Property. T.1 at 11. In those records, Zoning Officer discovered that Hamilton Township, through a grant from the Pennsylvania Department of Environmental Protection, removed 730 tons of tires (around 250,000 tires) from the Property in 2000, at a cost of approximately $105,000.00. *Id.* at 25-26, 33. Zoning Officer testified that he personally observed the Property from 2001 to 2003 (at which time the Treibles purchased the Property), and that there were not any tires remaining on the Property, nor was it being used as a junk yard. *Id.* at 27.

Upon hearing the testimony outlined above and reviewing the exhibits that the parties submitted, the ZHB denied Sweetwater's appeal. In doing so, the ZHB determined that Sweetwater failed to prove that a nonconforming use existed on the Property at the time the Zoning Ordinance was enacted. O.R., Item No. 2, Exhibit A at 15-16, 40. Even if Sweetwater had proven that a prior nonconforming use existed on the Property, the ZHB determined that the Treibles abandoned any prior nonconforming use. *Id.* at 21-23, 45. On appeal, Common Pleas, which reviewed

the record before the ZHB and did not take new evidence, also determined that Sweetwater failed to prove that a nonconforming use existed on the Property at the time the Zoning Ordinance was enacted, and that even if a prior nonconforming use existed, the Treibles abandoned that use. O.R., Item No. 22 at 4, 8. In addition, Common Pleas determined that Sweetwater waived its equitable estoppel claim by not raising it before the ZHB. *Id.* at 8.

## II.    Discussion

In this appeal, Sweetwater first asserts the ZHB considered issues not presented by the case and capriciously disregarded the evidence. Second, Sweetwater asserts that Common Pleas should have equitably estopped Hamilton Township from relying on the abandonment of a junk yard use, because Hamilton Township has continued to collect commercial-rate real estate tax payments for the Property. Lastly, Sweetwater alleges that the ZHB's decision caused an improper blanket extinguishment of all commercial uses of the Property.

Since "Common Pleas did not take additional evidence in this zoning appeal," this Court's role "is limited to reviewing the [ZHB]'s decision, not that of Common Pleas." *Dowds v. Zoning Bd. of Adjustment*, 242 A.3d 683, 695 (Pa. Cmwlth. 2020) (citation omitted). Thus, we evaluate whether the ZHB committed an error of law or abused its discretion. *Id.* With regard to whether the ZHB committed an error of law, we conduct a *de novo* review and "are not bound by the legal conclusions of the governing body or lower court[]." *EQT Prod. Co. (& ET Blue Grass Clearing, LLC) v. Borough of Jefferson Hills*, 208 A.3d 1010, 1025 (Pa. 2019) (citation omitted). With regard to whether the ZHB abused its discretion, we will find an abuse of discretion "whenever the findings of the governing body are not supported by substantial evidence." *Id.* at 1024. Substantial evidence is "such relevant evidence

6

as a reasonable mind might accept as adequate to support a conclusion." *Gorsline v. Bd. of Supervisors of Fairfield Twp.*, 186 A.3d 375, 385 (Pa. 2018).

### A. Issues Presented / Capricious Disregard of Evidence

Sweetwater, in its first issue on appeal, argues that the ZHB addressed two fictional issues (prior nonconforming use and variance by estoppel), which indicate that the ZHB capriciously disregarded the actual issue (lack of evidence of abandonment). To support this argument, Sweetwater claims that counsel for the parties agreed to narrow the issues at the hearing before the ZHB, and that the sole issue remaining was whether a prior nonconforming use had been abandoned. Thus, Sweetwater asserts that Hamilton Township conceded that a junk yard use was a prior nonconforming use on the Property.

### 1. Prior Nonconforming Use

A prior nonconforming use is a lawful use of property that existed before, and at the time of, the enactment of zoning restrictions that prohibit the use. *See Sowich v. Zoning Hearing Bd. of Brown Twp.*, 245 A.3d 1188, 1195 (Pa. Cmwlth. 2021) (citation omitted). A landowner has the burden of proving the existence of a prior nonconforming use, which requires him to produce "objective evidence of the precise extent, nature, time of creation and continuation of the alleged nonconforming use." *Jones v. Huntingdon Twp. Zoning Hearing Bd.*, 467 A.2d 1206, 1207 (Pa. Cmwlth. 1983). Zoning Ordinance provides that landowners in Hamilton Township have a right to continue a prior nonconforming use, subject to certain limitations. *See* Zoning Ordinance, Section 703.

Neither the ZHB, which conducted the hearing in this matter, nor Common Pleas, which reviewed the transcripts of that hearing, found that Hamilton Township conceded that a prior nonconforming use existed on the Property. Upon review of

7

the section of the hearing transcript that Sweetwater highlights (T.1 at 6-9), as well as the entire hearing transcript, we agree with the ZHB that Hamilton Township did not concede that a prior nonconforming use existed on the Property. Therefore, we conclude that the ZHB did not commit an error of law or abuse its discretion in requiring Sweetwater to prove the existence of a prior nonconforming use.

Sweetwater only addressed the use of the Property on or before 1976 (the year the Zoning Ordinance was enacted) in two ways. First, Sweetwater introduced the Property's tax assessment card, which showed that a 48′ by 60′ steel building was placed on the Property in 1965. T.1 at 47-48. Second, Chan, who worked at an automotive scrapyard on the Property from 1985 to the early 1990s, testified that the prior owner operated a junk yard on the Property. T.1 at 53-54. Simply stating that an owner prior to 1985 used the Property as a junk yard does not establish that a junk yard was in operation on the Property before and during 1976. Additionally, the placement of a 48′ by 60′ steel building on the Property in 1965, without more, does not establish that the steel building was being used as part of a junk yard in 1976. Although a junk yard may have existed on the Property in 1976, Sweetwater did not present any "objective evidence of the precise extent, nature, time of creation and continuation of the alleged nonconforming use." *See Jones*, 467 A.2d at 1207. Accordingly, we conclude that the ZHB did not commit an error of law or abuse its discretion in finding that Sweetwater failed to present sufficient evidence to prove that the Property was devoted to a junk yard use at the time of the enactment of the Zoning Ordinance.

### 2. Abandonment

Even if a prior nonconforming use had existed on the Property, or if Hamilton Township had conceded that one existed, Hamilton Township asserted that the

8

Treibles abandoned that use of the Property. To show abandonment of a prior nonconforming use, Hamilton Township had the burden of proving that the Treibles "(1) intended to abandon the nonconforming use, and (2) actually abandoned the use." *Zitelli v. Zoning Hearing Bd. of Borough of Munhall*, 850 A.2d 769, 771 (Pa. Cmwlth. 2004) (*citing Pappas v. Zoning Bd. of Adjustment of the City of Phila.*, 589 A.2d 675 (Pa. 1991)). "A zoning ordinance may establish a presumption of intent to abandon by incorporating a discontinuance provision that provides that the lapse of a designated time is sufficient to establish the intent to abandon the nonconforming use." *Zitelli*, 850 A.2d at 771 (citing *Latrobe Speedway, Inc. v. Zoning Hearing Bd. of Unity Twp., Westmoreland County*, 720 A.2d 127, 132 (Pa. 1998)). Zoning Ordinance does include a discontinuance provision, which states:

> When a non-conforming use is discontinued for a period of one (1) year (except where governmental action impedes access to the premises), or changed to a more restricted or conforming use for an period of time, such action shall be considered an abandonment thereof and such non-conforming use shall not thereafter be revised.

Zoning Ordinance, § 705.1.

Our review of the evidence presented in this matter shows that any prior nonconforming junk yard use of the Property was discontinued for greater than one year, because the Treibles owned the Property from 2003 to 2012 and did not utilize it as a junk yard during that time. Thus, Hamilton Township was entitled to a presumption that the Treibles intended to abandon the junk yard use.

Sweetwater attempted to rebut this presumption by showing that the Treibles (1) originally intended to use the Property to store repossessed vehicles, (2) did not store repossessed vehicles on the Property due to Mr. Treible's declining health, (3) paid commercial-rate property taxes, and (4) did not remove the drive over scale's

9

foundation or tear down the 48′ by 60′ steel building. Sweetwater claims that the Treibles' use of the Property is like the use of the racetrack in *Latrobe Speedway*, where our Supreme Court determined that the landowner rebutted the presumption of intention to abandon a prior nonconforming use. *Latrobe Speedway*, 720 A.2d at 132. In *Latrobe Speedway*, the following evidence was sufficient to rebut the presumption of intention to abandon:

> First, the property is assessed as a racetrack, and Latrobe has continued to pay yearly property taxes pursuant to that assessment. Second, although the structures on the property are in disrepair, no attempt had been made to dismantle these structures or otherwise convert the use on this thirty-five acre tract. Third, since racing activity ceased, Latrobe has negotiated with twenty-three persons . . . for the sale or lease of the premises as a racetrack. That Latrobe was not able to come to terms with these persons indicates a financial circumstance explaining the non-use of the premises.

*Id.* (citation omitted).

The Treibles' use of the Property is distinguishable from the use of the racetrack in *Latrobe Speedway*. First, the property in *Latrobe Speedway* was specifically assessed for tax purposes as a racetrack. Our Supreme Court, therefore, determined that the owner's payment of those taxes was evidence that could be used to rebut the presumption that the owner intended to abandon the racetrack use. The Treibles, however, were not paying property taxes based on the Property being assessed specifically as a junk yard, as the Property is generally assessed for tax purposes as a commercial property. Additionally, the Treibles' actual use of the Property (indoor storage of commercial equipment) was consistent with the Property's commercial tax assessment. As a result, the Treibles' payment of commercial-rate property taxes, while relevant, does not help Sweetwater in rebutting the presumption that the Treibles intended to abandon the specific junk

10

yard use of the Property. Second, although the Treibles originally intended to use the property to store repossessed vehicles, Mrs. Treible testified that Zoning Officer informed them, shortly after they purchased the Property, that they were not allowed to use the Property in that manner. The Treibles did not challenge that determination or apply for a variance. Instead, Mr. Treible, before he became ill, sold the drive over scale that was on the Property. This shows that the Treibles' intentions changed before Mr. Treible's illness. Third, after the Treibles removed the scale from the Property, they used the building on the Property as a storage space. Sweetwater did not present any evidence to show that the Treibles attempted to use, sell, or lease the Property as a junk yard. Accordingly, Sweetwater did not rebut the presumption of intention to abandon, and we conclude the ZHB did not commit an error of law or abuse its discretion in finding that Hamilton Township had met its burden of proving that the Treibles intended to abandon any junk yard use of the Property.

In addition to proving an intent to abandon the prior nonconforming use, Hamilton Township also needed to prove that the use was actually abandoned for the required time period. Actual abandonment cannot be based upon nonuse alone, but "'must be shown by the owner['s] . . . overt acts or failure to act.'" *Zitelli*, 850 A.2d at 772 (citation omitted). In this matter, not only did the Treibles not use the Property as a junk yard for approximately nine years, but they also sold the drive over scale that was on the Property. Since Blanchet and Kennedy, who both operate scrapyards, stated that a drive over scale is an essential piece of equipment for processing scrap materials, selling the scale was an overt act that shows that the Treibles actually abandoned the junk yard use of the Property. Therefore, we conclude the ZHB did not commit an error of law or abuse its discretion in finding

11

that the Treibles actually abandoned any prior nonconforming junk yard use on the Property.

## B. Equitable Estoppel

Sweetwater, in its second issue on appeal, argues that Hamilton Township should be equitably estopped[2] from asserting that the prior nonconforming junk yard use on the Property was abandoned, because Hamilton Township has been receiving commercial-rate property taxes for the Property. Sweetwater did not raise this issue during the hearings before the ZHB. *See generally* T.1; T.2. Instead, Sweetwater presented evidence of the Property's commercial-rate property taxes only for purposes of proving that the Property was being used as a commercial property and that the Treibles had not abandoned that use. *Id.* When those arguments failed, Sweetwater, for the first time, presented its equitable estoppel argument in its appeal to Common Pleas, thereby denying the ZHB an opportunity to evaluate the issue. O.R., Item No. 2 at 3. Since Sweetwater failed to present this issue to the ZHB, Common Pleas determined that it was waived. We also conclude that Sweetwater waived the issue by failing to raise it before the ZHB. *See* 2 Pa.C.S. § 753(a) (stating that "if a full and complete record of the proceedings before the agency was made [a] party may not raise upon appeal any other question not raised before the agency

---

[2] Equitable estoppel is an equitable theory under which a municipality is precluded from enforcing its land use regulations "where the municipality intentionally or negligently misrepresented its position with reason to know the landowner would rely upon the misrepresentation." *In re Kreider*, 808 A.2d 340, 343 (Pa. Cmwlth. 2002) (citation omitted). Equitable estoppel is an "unusual remedy granted only in extraordinary circumstances and the landowner bears the burden of proving his entitlement to relief." *Id.* (citation omitted). Under a similar theory, courts can grant a variance by estoppel "where there has been municipal inaction amounting to active acquiescence in an illegal use." *Id.* (citation omitted). Both theories "share common elements of good faith action on the part of the landowner: 1) that he relies to his determent, such as making substantial expenditures, 2) based upon an innocent belief that the use is permitted, and 3) that enforcement of the ordinance would result in hardship, ordinarily that the value of the expenditures would be lost." *Id.* (citations omitted).

. . . unless allowed by the court upon due cause shown."); *Korsunsky v. Hous. Code Bd. of Appeals*, 660 A.2d 180, 184 (Pa. Cmwlth. 1995) (finding a party waived review of an issue by not raising it before the local agency).

## C. Extinguishment of Commercial Uses

Sweetwater, in its third and final issue on appeal, argues that the ZHB's decision works an unjust forfeiture by extinguishing all commercial uses of the Property. Sweetwater waived review of this issue by raising it for the first time before this Court and failing to raise it before the ZHB or Common Pleas. *See* 2 Pa.C.S. § 753(a).

## III. Conclusion

Upon review, we conclude that the ZHB did not commit an error of law or abuse its discretion in determining that (a) Sweetwater failed to establish the existence of a prior nonconforming use on the Property, and (b) even if a prior nonconforming use did exist on the Property, Hamilton Township presented sufficient evidence to prove that the Treibles abandoned that use during their ownership of the Property.

The remaining issues Sweetwater raised in this appeal are waived, as Sweetwater did not raise them before the ZHB. Therefore, we affirm Common Pleas' order denying Sweetwater's appeal of the ZHB's decision.

_____
STACY WALLACE, Judge

13

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sweetwater Hamilton Township, PA, LLC, :
                                        Appellant :
                                                 :
        v.                                       :    No.  1302 C.D. 2021
                                                 :
Hamilton Township Zoning Hearing Board  :
and Hamilton Township                   :


# O R D E R


**AND NOW**, this 19th day of October 2022, the October 12, 2021 order of the Court of Common Pleas of Monroe County, which denied Sweetwater Hamilton Township, PA, LLC's appeal of the March 2, 2021 order of the Hamilton Township Zoning Hearing Board, is **AFFIRMED**.


_____
STACY WALLACE, Judge